IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CASEY LUCZAK,**

      **Petitioner,**

**v.**                                  **Civil Action No. 5:16cv189**

**JOE COAKLEY, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I.    Procedural Background

On December 21, 2016,  the pro se Petitioner, Casey Luczak, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. ECF No. 1. On January 3, 2017, the Petitioner paid the $5.00 filing fee.  ECF No. 6. On April 20, 2017, the Petitioner exercised his "Statutory Right to File First Amendment to His § 2241 as Matter of Course Via Rule 15(a)(1)[1]. ECF No. 9. On August 11, 2017, following a preliminary review of the original petition, which determined that summary dismissal was not appropriate, the Respondent was ordered to show cause why the Petition should not be granted. ECF No. 10. On September 27, 2017, the Respondent filed a Motion to Dismiss, or in the Alternative for Summary Judgment and Response to Show Cause Order, together with a supporting memorandum of law and exhibits. ECF Nos. 15 and 16. On September 28, 2017, a Roseboro notice was issued [ECF No. 17], and on October 19, 2017, the Petitioner filed his reply. ECF No. 22. On November 3, 2017, the Petitioner filed a combined motion for leave to amend and to compel discovery. ECF No. 23. On November 17, 2017, the Petitioner's motion to amend was granted, and the

---

[1] In effect, the Petitioner tenders further argument in support of one of the issues raised in his petition and also provides argument that his sentence was improperly enhanced.

Respondent was directed to respond to the arguments raised therein and to show cause, if any, why the motion to compel should not be granted. ECF No. 24. On December 6, 2017, the Respondent filed a Motion to Dismiss Amended Petition, or in the Alternative for Summary Judgment and Response to Order to Show Cause with a Memorandum in Support and one exhibit. ECF Nos. 26 and 27. On December 8, 2017, a Roseboro Notice was issued. ECF No. 31.  On January 5, 2018, the Petitioner filed an Omnibus Motion which he characterizes as a rejoinder to the Respondent's motion, as a well as motion to strike the motion, his own motion for summary judgment and motion for release on personal recognizance pending appeal. ECF No. 34. Also pending is the Petitioner's Motion for Appointment of Counsel [ECF No. 36] and his Combined Motion for Immediate Partial Summary Judgment and to Compel Discovery.  [ECF No. 37].

## II.    Background Facts[2]

On May 28, 2008, the grand jury in the District of Nevada returned a 27 count indictment against the Petitioner.  Counts 1 – 26, charged the Petitioner with wire fraud in violation of 18 U.S.C. § 1343. Count 27, charged the Petitioner with making a false statement in violation of 18 U.S.C. § 1001. The indictment also included a forfeiture allegation, which provided that upon conviction of the felony offense charged in Counts 1 – 26 of the indictment, he would forfeit any property consisting or derived from proceeds traceable to violations of 18 U.S.C. § 1343 up to $2,200,000. ECF No.1. Trial began on January 11, 2010, and continued for four days. ECF Nos. 73, 74, 76, 80).  On January 15, 2010, the Petitioner filed a Notice of Intent to Plead Guilty. ECF No. 78. The Petitioner entered a plea of guilty to Counts 1-5, 7-8 10-20, 22-26, and 27 of the

---

[2] Except as otherwise noted, the information is this section is from the Petitioner's criminal docket in the District of Nevada, 2:08cr0161, available on PACER.

indictment without having reached a plea agreement with the government. Counts 6, 9 and 21 of the indictment were dismissed on the motion of the United States. ECF Nos. 79, 107. A sentencing hearing was conducted on May 26, 2010. ECF No. 108. On May 27, 2010, judgment was entered which sentenced the Petitioner to a term of incarceration of 121 months to be followed by a five year term of supervised release. In addition, a special assessment of $2400 was imposed as well as restitution in the amount of $4,288,158.74. The special assessment was to be in a lump sum payment due immediately, and the restitution was to be paid at the rate of one-third of the Petitioner's prison earnings and, thereafter, at the rate of 10% of the Petitioner's gross earnings while on supervised release. The judgment included a recommendation that the Petitioner be incarcerated in a facility in the State of Georgia, or as near the State of Georgia as could be designated. Finally, the judgment directed that the Plaintiff was to self-surrender for service at the institution designated by the BOP before 2:00 p.m. on June 29, 2010. ECF No. 91.

The Petitioner filed a direct appeal, alleging that his trial counsel was ineffective, that the district court erred in applying a two-level enhancement for the use of "sophisticated means," and the district court failed to consider his gambling addiction when it imposed his sentence. On February 22, 2011, the Ninth Circuit affirmed the sentence and held that as a general rule, an appeals court does not review claims of ineffective assistance of counsel, that the Petitioner's scheme involved "especially complex or especially intricate offense conduct" in its execution or concealment," and that the District Court's sentence, at the bottom of the guideline range, was substantively reasonable. U.S. v. Luczak, 415 Fed. Appx. 776 (9th Cir. 2011).

On February 28, 2012, the Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255, asserting: (1) prosecutorial misconduct; (2) ineffective assistance of counsel; and (3) that the sentence imposed was unconstitutionally extreme. ECF No. 116. On August 8, 2012, the district court entered an order denying the § 2255 motion. ECF No. 134. On September 26, 2012, the Petitioner filed a Motion for Certificate of Appealability [ECF No. 139], which was denied on September 27, 2012. ECF No. 140. Nevertheless on January 11, 2013, the Petitioner filed a notice of appeal and/or request for certificate of appealability. ECF No. 142. On April 9, 2013, the Ninth Circuit denied the Petitioner's request for a certificate of appealability. ECF No. 143.

On September 2, 2016, the Petitioner filed an Application for leave to file a second or successive § 2255 motion in the Ninth Circuit, arguing that his conviction was invalid due to a tainted indictment, a forged restitution list, ineffective assistance of counsel, and improper seizure of his assets. Luczak v. United States, Case No. 16-72925. The Ninth Circuit denied the application on April 18, 2017.

Finally, on March 3, 2017, the Petitioner filed a Motion for Summary Judgment as a Matter of Law. ECF No. 159. The Petitioner requested that the court reduce his sentence two levels by recognizing its error in enhancing him two levels for sophisticated means. In addition, he requested that the government return all his assets illegally seized in forfeiture. ECF No. 159.[3] The district court construed this pleading as a Motion for Downward Departure.  The court then referenced Rules 35 and 36 of the Federal Rules of Criminal Procedure. Because the Petitioner's motion came several years after his sentence, the court found that Rule 35 was inapplicable. In addition, the

---

[3] The district court entered an Order of Forfeiture in the amount of a $1,977,500 judgment on May 26, 2010. ECF No. 89.

court found that the Petitioner was not asking that an error be corrected, but instead to make a change. The court found that it lacked jurisdiction to make such change under either rule. Accordingly, the Petitioner's construed motion was denied on August 8, 2017.

In addition to his efforts in the sentencing court, the Petitioner has previously filed several cases with this court. On January 16, 2013, the Petitioner filed Case No. 5:13cv4, a Bivens action against the United States attorney who prosecuted his case, alleging that she prosecuted him by means of a defective indictment, suppressed exculpatory evidence, and created a restitution list that was a forgery. The case was dismissed as frivolous based on Heck v. Humphrey, 512 U.S. 477 (1994).

On March 13, 2013, the Petitioner filed Case No. 1:13cv107, another Bivens action, this one against his privately-retained former defense counsel, for collecting a $230,000 fee from him without preparing a defense, thereby committing the tort of negligence. The case was transferred to the District of Nevada on November 18, 2013, where it was opened as Case No. 2:13cv02362, and dismissed for failure to state a claim on April 14, 2014.

On February 11, 2015, the Petitioner filed Case No. 3:15cv12, a petition under 28 U.S.C. § 2241, in which he argued that this court should dismiss Count Two of the indictment in his criminal case because of actual innocence, and because he did not receive a fair trial because his trial counsel engaged in criminal activity. This court denied the petition because the Petitioner could not meet the threshold standard of In re Jones, and therefore had not demonstrated that § 2255 is an inadequate or ineffective remedy.

Finally, on July 21, 2017, after he filed the instant petition, the Petitioner filed Case No. 3:17cv86, a petition under 28 U.S.C. § 2241, claiming that because of his age, he was eligible for early release pursuant to BOP Program Statement § 5050.49. After reviewing the requirements for compassionate release or reduction in sentence procedures for implementation of 18 U.S.C. § 3582(c)(1)(A) and 4205(g), the court determined that the Petitioner's term of imprisonment was not eligible for reduction in sentence under BOP Program Statement § 5050.49 4.c. Therefore, the case was denied and dismissed with prejudice on October 31, 2017.

### III.    The Pleadings

**A. The Petition**

In his original pleading, the Petitioner raised the following grounds for relief:

1. He was illegally held in a low-security prison for 13 months after self-surrendering to a satellite prison camp by court order.

2. The BOP has been taking payments illegally under the guise of the Inmate Financial Responsibility Program from his prison account for 77 months in blatant disregard of a court order.

3. The BOP refuses to assure that he can be released on the specific date he completes 75% of his originally imposed sentence in "hard time," then refuses to credit him his earned good time credits in full accord with BOP Program Statement § 5050.49-CN1.

4. The BOP refuses to file a motion with his sentencing court for sentence reduction based on four constitutional issues which include: (1) untainted assets were seized prematurely depriving him of hiring counsel of his choice with his own

funds; (2) trial counsel induced him during trial to plead guilty to "straight up" with no sentencing plan in place; his false statement indictment is fatally defective and his restitution list and amount is forgery bringing "fraud upon the court" by an overly zealous prosecutor who literally orchestrated a malicious prosecution.

For relief, it appears that the Petitioner is requesting that his projected release date be properly changed to the date he completes 75% of his sentence in "hard time," his good time earned be applied to that date, and he be discharged on the resulting date with time served. Absent this relief, the Petitioner "insists that this honorable court adjudicate this case deductible by all eight allegations in appearance here and determine appropriate remedy." ECF No. 1 at 8.

## B. Motion to Dismiss or for Summary Judgment

In support of his alternative motions, the Respondent argues that:

1. The Petitioner is precluded from pursuing all of the relief he seeks because he has failed to exhaust his administrative remedies for his IFRP, institution placement; and conditions of confinement claims[4] and does not argue that exhaustion would be futile;

2. The Petitioner is a voluntary participant in the IFRP and can withdraw at any time;

3. The Petitioner is ineligible for consideration for compassionate release;

4. The Petitioner does not have a right to placement in the facility of his choice;

---

[4] The Respondent acknowledges that the Petitioner has exhausted his compassionate release claim.

5.  The Court lacks subject matter to review the Petitioner's conditions of confinement claim pursuant to 28 U.S.C. § 2241; and the

6.  Petitioner cannot meet the <u>Jones</u> criteria to challenge his conviction and sentence.

**C. Petitioner's Reply**

In his reply, signed on October 16, 2017, the Petitioner indicates that he accepts the fact that, to date, he has illegally served 87 months in a federal prison for all the wrong reasons.  Moreover, he indicates that he does not attack his conviction. However, he does request quite clearly that this court remand his case for resentencing to time served based on his wrongful custody placement and IFRP claim. In addition, he requests that his five years of supervised release be dismissed and his assets be returned. The Petitioner continues to refer to a "forged" restitution list and malicious prosecution by an overzealous prosecutor and expends several pages explaining this argument including an allegation that the presiding judge "spotlighted himself as orchestrating this malicious prosecution."  ECF No. 22 at 6. The Petitioner, although repeatedly indicating that he is not attacking his sentence, but only its execution, devotes pages to errors committed in the amount of restitution and the forfeiture of assets. The Petitioner is very clear that his request for relief is not just immediate release but also the return of his seized assets and dismissal of the requirement of five years of supervised release. The Petitioner concludes that this "relief can be based as matter of law on three issues stated and supported in this § 2241. First, under the doctrine of stare decisis, the BOP and sentencing court have both violated the procedures of the IFRP. Second, the safety of the elderly petitioner was put into

jeopardy unnecessarily for 13 months when he self-surrendered and was improperly

processed into a 'low' security prison facility for 13 months. Third, his restitution list is

invalid and inadmissible for a myriad of reasons, with this list effecting the instructions of

the IFRP schedule." ECF No. 22 at 26.

## D. Petitioner's Amended  Petition

In his amended petition, filed on November 3, 2017, the Petitioner indicates that

in July of 2017, his case manager requested the Probation Office in the Eastern District

of Kentucky investigate a placement and transfer request in preparation for his ultimate

release date, via good conduct  time, on April 9, 2019. The Petitioner indicates that the

residence being inspected was that of his common law wife, Kathleen Principe. The

Petitioner maintains that since the first day of his incarceration, June 29, 2010, Ms.

Principe's residence has appeared as the one and only place he would live when

released. The Petitioner indicates that the inspecting probation officer was Ms.

Vonderhaar. Following the inspection, the Petitioner indicates that on or about October

1, 2017, he was called into his case manager's office and advised him that she had

received a letter from the probation office that indicated that it disapproved of his living

with Ms. Principe. In addition, the Petitioner alleges that sole basis for disproving the

placement was "she [Ms. Principe] should have been indicted. " ECF No. 23 at 6. The

Petitioner maintains that this action "adds with certitude to [his] claims in his § 2241, that

the execution of his sentence by the BOP is improper and illegal." Id. at 7. The

Petitioner then notes that he is now homeless, and "this court can now visualize the

pattern of injustice that permeates this case. It started with a fatally defective indictment,

which prosecutor Brown introduced to a grand jury bringing fraud upon the court; next, a

defense attorney convinced the petitioner to 'straight-up' change his plea to guilty after four days of trial because a deal had been made (that never was) and he would receive a sentence of probation; and finally the BOP improperly placed him in a higher level security facility for 13 months unnecessarily, extorted money from him for 88 months, and transferred him to a camp in the mountains of West Virginia, where he has had not one visitor, except for attorneys of inmates he was helping, or the government and FBI on other occasions when he was assisting inmates with Rule 35(b) activity." ECF No. 23 at 9.

For relief, the Petitioner requests that the BOP be ordered to release him to a RRC placement ten months prior to his home detention eligibility date of October 8, 2018. The Petitioner then indicates that his preference would be the Talbert House Cornerstone in Cincinnati, but he "will have an outside relative find and negotiate his 10 month stay at any BOP accepted RRC facility  that can accommodate him for the 10 months." Id. at 10.  In addition, pursuant to Rule 16 and 17(c) of the Federal Rules of Criminal Procedure, the Standing Discovery Order and/or the Due Process Clause of the Fifth Amendment, the Petitioner asks for an order compelling the probation office to produce the letter disapproving Ms. Precipe's resident for his release placement for inspection and subsequent usage to support any future and applicable legal proceedings.

**E. Respondent's Motion to Dismiss**

The Respondent presents the following arguments in support of his Motion to Dismiss the Amended Petition:

A. The Petitioner's supervised release claim is not cognizable under 28 U.S.C. § 2241.

B. The Petitioner does not have a right to placement in the facility of his choice; and

C. The Petitioner cannot meet the <u>Jones</u> criteria to challenge his conviction and sentence;

In addition, the Respondent argues that the Petitioner's motion to compel should be denied

## IV.    Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In

<u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert

"detailed factual allegations," but must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555

(citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to

relief above the speculative level," <u>id.</u> (citations omitted), to one that is "plausible on its

face," <u>id.</u> at 570, rather than merely "conceivable." <u>Id.</u> Therefore, in order for a complaint

to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to

state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324

F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th

Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the

complaint must meet a "plausibility" standard, instituted by the Supreme Court in

<u>Ashcroft v. Iqbal</u>, where it held that "a claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a

defendant has acted unlawfully" in order to meet the plausibility standard and survive

dismissal for failure to state a claim. <u>Id.</u>

**B.** **Motion for Summary Judgment**

    The Supreme Court has recognized the appropriateness of summary judgment

motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases.

<u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977); <u>see</u> <u>also</u> <u>Maynard v. Dixon</u>, 943 F.2d

407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### V.     Analysis

#### A. Exhaustion of Administrative Remedies

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.  An

inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

In the response to the petition, the Respondent argues that the Petitioner is precluded from pursuing his relief regarding the IFRP, his institutional placement and conditions of confinement because he has failed to exhaust his administrative remedies with respect to those issues. Without addressing the other issues, the Petitioner alleges that he has exhausted his administrative remedies with regard to the IFRP because the IFRP is central to the collection of restitution, and he therefore attacked the IFRP through his "forged" restitution list in Remedy ID # 885632-F1. However that grievance was rejected, and the Petition did not file an appeal at the regional level. Therefore, that grievance is not exhausted. In addition, the Petitioner alleges that he presented his IFRP claim in Remedy ID No. 879113-A1, when he  stated "…when legal documents were presented to the BOP clearly stating a court order contradicted those withdrawals, the BOP simply refused to make any adjustments." ECF No. 22 at p. 14. While that grievance was initiated at that facility level on October 13, 2016, before the petition was filed, it was not exhausted until February 6, 2017, after the petition was filed. Therefore, even if it exhausted his administrative remedies with respect to the IFRP, it was not exhausted before the petition was filed, and the Court could refuse to address the claims raised in his petition other than his compassionate release claim, which the Respondent acknowledges is exhausted.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus

actions.  However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241.  See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 113 (1997)).[1]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute.  Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed.  Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances.  See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources.  Accordingly, the

---

[1] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions.  LaRue, 2006 WL 1674487 at *7.  In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings.  Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability.  Id.  The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings.  Id. (listing cases).  The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits

## B. <u>Inmate Financial Responsibility Program</u>

The IFRP is a program that provides an avenue for collection of payments toward a monetary penalty imposed by court order. <u>See</u> 28 C.F.R. § 545.10-545.11. Under the program, prison staff assists an inmate in developing a financial plan to meet those obligations, and monitors the inmate's progress under the plan. <u>Id.</u> § 545.11 The BOP sets payment amounts based on the inmate's financial profile, including the inmate's specific obligations, institution resources, and community resources. <u>Id.</u> § 545.11(b). An inmate is responsible for maintaining progress in fulfilling the financial obligations of the plan. <u>Id.</u>

Inmates declining to participate in IFRP, or to comply with a financial plan created pursuant to it, will be placed on "refuses" status and will lose certain privileges. <u>Id.</u> §545.11(d). The loss of privileges resulting from an inmate's refusal to participate in the IFRP include: (1) notification to the Parole Commission; denial of furlough; denial of performance pay above the maintenance pay level, bonus pay, or vacation pay; denial of certain work and UNICOR assignments; denial of community-based program placement; denial of release gratuity; and, denial of incentives for participation in residential drug treatment programs. <u>Id.</u> § 545.11(d)(1)-(11).

Upon designation to FCC Hazelton, the Petitioner entered into a voluntary agreement to submit payments toward satisfaction of his financial obligations. More specifically, the Petitioner agreed to pay $50 per month starting in October of 2011. ECF No. 16-1 at p. 27.  As of September 5, 2017, the Petitioner was still participating in

16

the program. Id. at p. 30.

The Petitioner argues that the BOP altered the district court's restitution payment plan because the order directed the Petitioner to pay restitution at the rate of one-third of his prisoner earnings. However, the BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP. U.S. v. Lemoine, 546 F.3d 1042 (9th Cir. 2008), see also McGhee v. Clark, 166 F.3d 884 (7th Cir. 1999). Moreover, the BOP only "implements" the IFRP after a prisoner has chosen to participate in it. Therefore, the Petitioner cannot now complain about the BOP impermissibly collecting restitution payments after he elected to participate in the IFRP. See Jordan v. Holt, 488 Fed.Appx. 587 (3rd Cir. 2012).

### C. Compassionate Release

The Petitioner, who is now 80 years old, alleges that because of his age, he is eligible for early release from incarceration pursuant to BOP 5050.49. He further maintains that the BOP refuses to assure than he can be released on the specific date that he completes 75% of his originally imposed sentence in "hard time" and then refuses to credit him his earned good time credits.

BOP Program Statement § 5050.49 deals with compassionate release or reduction in sentence ("RIS") procedures for implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). The provision of BOP Program Statement § 5050.49 which the Petitioner seeming relies on is section 4.c, which addresses "Requests Based on Non-Medical Circumstances—Elderly Inmates," and applies to, "[i]nmates age 65 or

older who have **served the greater** of 10 years or 75% of the term of imprisonment to which the inmate was sentenced. (emphasis added). The Petitioner was sentenced to 121 months imprisonment. 75% of that sentence is slightly more than 90 months. Therefore, the Petitioner's sentence renders him ineligible for release under this section until he has served 10 years, or 120 months. The program statement does not adjust the time served by good conduct time, and therefore, the Petitioner is not entitled to release under this section even if he is more than 65 years of age.

**D.  18 U.S.C. § 3582**

A court may not modify a term of imprisonment once it has been imposed except that the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, if it finds that extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. § 3582(c)(1)(a)(i).  The United States Sentencing Guidelines defines extraordinary and compelling  reasons to include medical conditions of the defendant, age of the defendant, family circumstance, and other reasons as determined by the Director. U.S.S.G. §1B1.13. (Application Notes).

In the instant case, the Petition complains that the BOP has failed to file a motion for reduction in his sentence, and the denial to do so has prolonged his detainment in custodial detention.  The petitioner then presents four grounds supporting a motion for reduction in his sentence: (1) the Supreme Court rules assets seized prematurely denied the accused of constitutional rights to pay for his own counsel of choice; (2) changing plea during trial without sentence plan in place is a constitutional transgression; (3) indictment for making false statements is fatally defective; and (4) restitution list is a forgery intentionally presented to the petitioner after he was

sentenced at his sentencing hearing. Aside from the fact that these "alleged" grounds for the BOP to seek a sentence reduction are actually challenges to his conviction and do not fit the definition of extraordinary and compelling reasons as set forth in the application notes, this is not an issue for a § 2241 petition. This court is not the sentencing court and does not have the authority to resentence the Petitioner.

### E. <u>Custody Classification</u>

The Petitioner maintains that he was illegally held in a low-security prison after self-surrendering to a satellite camp by court order. The undersigned acknowledges that the Petitioner was directed to self-surrender, but the order did not mention any specific facility, but instead, referenced the "institution to be designated by the BOP."

"[T]he power to designate the place of confinement of a federal prisoner rests exclusively in the Attorney General of the United States." <u>Ange v. Paderick</u>, 521 F.2d 1066, 1068 (4th Cir. 1975).  The BOP has discretion to determine where a federal prisoner will be incarcerated. <u>See</u> 18 U.S.C. § 3621(b); <u>Cochran v. Morris</u>, 73 F.2d 1310, 1318 (4th Cir. 1996) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976).  The language of 18 U.S.C. § 3621(b) is very specific that the BOP "shall designate the place of [a] prisoner's imprisonment.

Moreover, it is well settled that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another. <u>Olim v. Wakinekona</u>, 461 U.S. 238-244-45 (1983); <u>Meachum, v. Fano</u>, 427 U.S. 215, 224-25 (1976). Furthermore, because Congress has given federal prison officials full discretion to control matters of housing and eligibility for rehabilitative programming, an inmate has no legitimate statutory or

constitutional entitled sufficient to invoke due process. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Therefore, the Petitioner's allegations with respect to his 13 months incarceration in a low security prison fails to state a claim for habeas relief.

### F. Conditions of Confinement

The Petitioner argues that he only asks that his projected release date be properly changed to the date he completes 75% of his sentence. Absent that, he insists that the court adjudicate the case "deductible by all eight allegations in appearance herein and determine appropriate remedy." ECF No. 1 at P. 8. Although not absolutely clear, it appears that the Petitioner is referencing a memo from the Director of the BOP, dated April 7, 2015, which responds to eight recommendations made by the Office of the Inspector General's Draft Audit Report: Review of the Impact of an Aging Inmate Population on the Federal Bureau of Prisons.

A section 2241 petition is used to attack the manner in which the sentence is executed. *See* 28 U.S.C. § 2241. More specifically, a section 2241 petition is appropriate where a prisoner challenges the fact or duration of his confinement but not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973).

To the extent that the Petitioner may be alleging that the recommendations made in the 2015 memo have not been implemented, that failure would impact the conditions and not the fact or duration of his confinement. According, nothing in that memo, or the Petitioner's complaints about his incarceration in West Virginia or Georgia is related in any way to the execution of his sentence. Rather, it is clear that the Petitioner's claims regarding the conditions of his confinement should have been raised pursuant to a civil

rights complaint. <u>Preiser</u> at 499-500 (a civil rights action is the proper remedy for a prisoner challenging the conditions of his prison life).   <u>See also</u> <u>Lee v. Winston</u>, 717 F.2d 888 (4th Cir. 1983).

### G. Residence on Release

In 1984, Congress passed the Sentencing Reform Act, which replaced the federal parole system with the system of supervised release. <u>See</u> 18 U.S.C. § 3583. Under the supervised release system, judges impose conditions at sentencing which take effect after the completion of the defendant's prison term, and in contrast to parole, do not reduce the length of the custodial portion of a defendant's sentence.

In his amended petition, the Petitioner voices objections to the fact the Probation Office for the District Court of the Eastern District of Kentucky denied his first choice in living situation when he is released. Again, as discussed above, that choice was with his common law wife. However, where the Petitioner lives after he is released from the custody of the BOP does not affect the fact or duration of his confinement. The BOP will release the Petitioner on his release date, which is currently projected to be April 9, 2019, regardless of where his supervised release takes place. In fact, the BOP will release the Petitioner on his release date regardless of whether he has an approved release plan at the time, because his custodial sentence will have expired. <u>See, e.g.</u>, Guide to Judiciary Policy, Vol. 8 E, Ch. 3 § 33.32. ("In supervised release and mandatory release cases, disapproval of the plan will not affect the date of the offender's release into the community.")

Accordingly, because the disapproval of his Release Plan to the home of his common law wife does not affect the fact or duration of his confinement, this claim  is

not cognizable in a habeas corpus petition.

In addition, the Petitioner seeks an order compelling the BOP and the Probation Office of the Eastern District of Kentucky to produce in discovery the letter sent to his case manager, explaining why the probation office would not approve the placement. Because his release plan is not a proper subject of a § 2241 petition, any discovery involving that placement disapproval is also not appropriate in this action. Moreover, the document in question was prepared by a probation officer in the Eastern District of Kentucky, and this Court does not have jurisdiction over their personnel.

### H. RRC PLACEMENT

Because the Petitioner's home release plan was not approved, and he now describes himself as being homeless. the Petitioner requests as part of his amended petition, that the Court order the BOP to place him In an RRC for the last ten months of his sentence. He further requests that he be placed in the Talbert House Cornerstone in Cincinnati. However, this again is not relief which this Court can grant.

The Petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials. Furthermore, an inmate has no protected interest in being placed in an RRC for any particular amount of time. See Miller v. Lappin, 2009 WL 166873 Slip Op.2 (W.D. Va. 2009). "[The Second Chance Act] does not require the court or BOP officials to place [the inmate] in community of home confinement for any portion of his sentence. The decision regarding such placement remains discretionary." Id. Therefore, this Court cannot intervene in that decision unless a clear constitutional violation occurred.

22

In the instant case, the Petitioner makes no allegation that the BOP has failed to make an individualized assessment of a decision to confine him in a RRC as required by 18 U.S.C. § 3621(b).  Accordingly, the Petitioner has made no showing that would entitle him to a review of by this Court of his proposed RRC placement.

### I.  <u>Supervised Release</u>

Although not raised in either his petition or amended petition, the Petitioner has raised the issue that his term of supervised release. More specifically, he alleges that pursuant to 18 U.S.C. § 3583(b), his authorized term of supervised release was not more than three years.  "Yet, with purpose, in support of his allegations of malicious prosecution, the court issued five years of supervised release with purpose." ECF No. 34 at p. 13. The Petitioner maintains that this constitutes cruel and unusual punishment, and he "beseeches this court to dismiss this supervision in its entirety, since it decisively serves no purpose in the case at bar, especially for a man in his 80's with no criminal history of any kind." <u>Id.</u> at p. 14.

This issue, like many raised by the Petitioner, attempts to adjudicate a matter which is not properly presented in a § 2241. It is the district court, not the Bureau of Prisons, which imposed a term of supervised release on the Petitioner. The Bureau of Prisons lacks the power to alter a sentence, and "must administer the terms of imprisonment as imposed by the sentencing court." <u>Reed v. Cheatman</u>, 601 F. App'x 854, 859 (11th Cir. 2015). Therefore, any challenge to the district court's imposition of supervised release is necessarily an attack on the legality of the Petitioner's sentence. A 28 U.S.C. § 2255 motion, not a § 2241 petition, is the appropriate vehicle for such a collateral attack. <u>Rice v. Rivera</u>, 617 F.3d 802, 807 (4th Cir. 2000); <u>In re Vial</u>. 115 F.3d

1192, 1194 (4th Cir. 1997).

**J.   <u>Conviction and Sentence</u>**

Title 28, United States Code, Sections 2241 and 2255 each create a mechanism

by which a federal prisoner may challenge his or her detention. However, the two

sections are not interchangeable. Prisoners seeking to challenge the validity of their

convictions or their sentences are required to proceed under section 2255 in the district

court of conviction. <u>Rice v. Rivera</u>, 617 F.3d 802, 807 (4th Cir. 2000); <u>In re Vial</u>. 115

F.3d 1192, 1194 (4th Cir. 1997).

Under § 2255, a prisoner may move the sentencing court "to vacate, set aside or

correct" his sentence if he claims it "was imposed in violation of the Constitution or laws

of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack." 28 U.S.C. § 2255(a). Second or successive petitions

pursuant to § 2255 must be certified by the appropriate court of appeals. <u>Id.</u> § 2255(h).

Courts of appeals grant such requests only if newly discovered evidence establishes "by

clear and convincing evidence that no reasonable factfinder would have found the

movant guilty" or that a previously unavailable "new rule of constitutional law' has been

"made retroactive to cases on collateral review by the Supreme Court." <u>Id.</u>

A petition for writ of habeas corpus pursuant to § 2241, on the other hand, is

intended to address the **execution** of a sentence, rather than its validity, and is to be

filed in the district where the prisoner is incarcerated. Examples of an appropriate use of

§ 2241 include "actions challenging the computation of parole, computation of good time

or jail credits, prison disciplinary actions, or imprisonment allegedly beyond the

expiration of a sentence." <u>Anderson v. Pettiford</u>, 2007 WL 15777676 (D.S.C. May 31, 2007) (internal citations omitted).

In the instant case, the Petitioner repeatedly stresses that he is not challenging the validity of his conviction or sentence, but instead, is challenging the execution of his sentence. However, it is clear that certain of his requests for relief would necessarily require this Court to consider the validity of his conviction. Specifically, the Petitioner in almost every pleading presented in this action refers to the trial courts premature seizure of assets, thus depriving him of the ability to retain counsel of his own choosing; ineffective assistance of counsel in light of a change in plea during trial without having a sentence plan in place; his indictment for making a false statement is fatally defective; and the restitution list is a forgery. In addition, the Petitioner also alleges that "unknown parties have literally changed the language of [his] indictment conviction in his PSR [which] must be construed as obstruction of justice which mandates instant relief." ECF No. 36 at p.2.

While the terms of § 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under § 2241, there is nonetheless a "savings clause" in § 2255, which allows a prisoner to challenge the validity of his conviction under § 2241, if he can demonstrate that § 2255 is "inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e).  The law is clearly developed, however, that relief under § 2255 is not inadequate or ineffective merely because relief has become unavailable under § 2255 because of a limitation

bar,[5] the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal.  In re Vial, 115 F. 3d 1192, 1194 n. 5 (4th Cir. 1997).

When contesting a conviction, a petitioner bears the burden of demonstrating that the § 2255 remedy is inadequate or ineffective, and the standard is an exacting one.  In the Fourth Circuit, § 2255 is deemed to be "inadequate and ineffective" to test the legality of a conviction only when all three of the following conditions are satisfied:

> (1) at the time of the conviction, the settled law of this Circuit or of the Supreme Court established the legality of the conviction;
>
> (2) subsequent to the prisoner's direct appeal and first section 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal, **and**
>
> (3) the prisoner cannot satisfy the gate-keeping provisions of section 2255 because the new rule is not one of constitutional law.

In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000) (emphasis added).

However, "[t]he text of the savings clause does not limit its scope to testing the legality of the underlying criminal conviction."  United States v. Wheeler, 886 F.3d 415,

---

[5]  In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255. The limitation period shall run from the last of:

a. The date on which the judgment of conviction becomes final;
b. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
c. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
d. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

(4th Cir. 2018), *reh'g en banc denied* June 11, 2018 (quoting Brown v. Caraway, 719

F.3d 583, 588 (7th Cir. 2013)).  In Wheeler, the Fourth Circuit concluded that § 2255(e)

provides "an avenue for prisoners to test the legality of their sentences pursuant to §

2241, and Jones is applicable to fundamental sentencing errors, as well as undermined

convictions." Id. at 428.  When contesting a sentence through a petition filed under §

2241, a petitioner still must meet the savings clause of § 2255.  In the Fourth Circuit, §

2255 is deemed to be "inadequate and ineffective" to test the legality of a sentence only

when all four of the following conditions are satisfied:

> (1) at the time of sentencing, settled law of this circuit or the
> Supreme Court established the legality of the sentence; (2)
> subsequent to the prisoner's direct appeal and first § 2255
> motion, the aforementioned settled substantive law changed
> and was deemed to apply retroactively on collateral review;
> (3) the prisoner is unable to meet the gatekeeping provisions
> of § 2255(h)(2) for second or successive motions; **and** (4)
> due to this retroactive change, the sentence now presents
> an error sufficiently grave to be deemed a fundamental
> defect.

Wheeler, supra, at 429 (emphasis added).  The Fourth Circuit further specified that a

change of substantive law within the circuit, not solely in the Supreme Court, would be

sufficient to satisfy the second prong of the four-part test established in Wheeler.  Id.

Although the Petitioner does not raise the savings clause, it is clear that he is not

entitled to its application. The Petitioner asserts that he is not challenging his conviction,

Yet, his repeated references to his plea agreement, a forged restitution list, the fatally

defective indictment with respect to false statements, etc., all call into question the

legality of his conviction. However, even if he satisfied the first and third elements of

Jones, the crimes for which he was convicted remain criminal offenses, and therefore,

he cannot satisfy the second element of Jones. With respect to his allegations regarding

his "draconian sentence" and what may be an improper length of supervised release, the Petitioner cannot meet the second prong of the <u>Wheeler</u> test. Therefore, to the extent that the Court is inclined to review his § 2241 petition as challenging his conviction and sentence, he cannot meet the savings clause of § 2255 under either the <u>Jones</u> or <u>Wheeler</u> tests, and this court is without jurisdiction to consider the petition in those respects.

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Respondent's Motions to Dismiss or for Summary Judgment [**ECF Nos. 15 and 26**] be **GRANTED** and the Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [**ECF No.** 1] and Amended Petition [**ECF No. 9**] be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that the Petitioner's Motion to Compel [**ECF No. 23**]; Omnibus Motion [**ECF No. 34**]; Motion for Appointment of Counsel [**ECF No. 36**]; and Combined Motion [**ECF No. 37**] be **DENIED AS MOOT**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made and the basis for such objection. A copy of such objections should also be submitted to the United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467

28

U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested. Furthermore, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: August 3, 2018



*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE